IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROL L. ZIMMERMAN<br>  on behalf of TERRY L. ZIMMERMAN,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>  Commissioner of Social Security<br>   Administration,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIV-09-549-M |

## REPORT AND RECOMMENDATION

Plaintiff appears in this matter as the substituted party for her deceased husband, Terry L. Zimmerman. Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying Mr. Zimmerman's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On August 6, 2004, Mr. Zimmerman filed his application for benefits. He alleged that

1

he became disabled on October 6, 2000, due to progressive heart disease, high blood pressure, obesity, and depression. (TR 119-121, 127). Mr. Zimmerman stated he worked for a five-month period in 2002 as a plant caretaker, but the agency declared this work to be non-substantial gainful activity due to the low earnings associated with this position. (TR 128, 150, 151, 158, 176).

In September 2004, Mr. Zimmerman described his usual daily activities, which included light housework, taking care of his personal needs, feeding his birds, visiting with his wife and son, making sandwiches, and writing poetry and music. (TR 159-166). Mr. Zimmerman stated that he could walk one block, used a cane, and had difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, remembering, concentrating, handling stress, and completing tasks. (TR 164-165). He described chest pain due to angina occurring daily, extending into his neck, left arm, and back, and relieved by taking nitroglycerin and lying down. (TR 167-168). Mr. Zimmerman described a tenth grade education[1] and previous work as a bricklayer and retail salesperson. (TR 170, 180). The application was denied initially and on reconsideration. (TR 28, 29).

At Mr. Zimmerman's request, a hearing *de novo* concerning Mr. Zimmerman's application was conducted on January 25, 2007.[2] (TR 435-483). Unfortunately, Mr. Zimmerman died on December 24, 2006, as a result of a myocardial infarction (heart attack),

---

[1] Later, Mr. Zimmerman's education level was clarified, and the record shows he completed the ninth grade. (TR 493).

[2] Plaintiff's request for a hearing was submitted to the agency on June 13, 2005. (TR 92).

atherosclerotic cardiovascular disease, and hypertension. (TR 103). Plaintiff substituted herself as the claimant on behalf of her deceased husband (TR 62), and Plaintiff appeared at the hearing and testified. (TR 453-477). Dr. Lynn, a medical expert ("ME"), and a vocational expert ("VE") also testified at the hearing. (TR 443-448, 478-483).

Administrative Law Judge Thompson ("ALJ"), who conducted the hearing, issued a decision in April 2007 in which the ALJ found that Mr. Zimmerman was not disabled within the meaning of the Social Security Act. (TR 33-41). Plaintiff appealed this decision, and the Appeals Council reversed the ALJ's decision and remanded the application for another hearing and decision. (TR 42-44). A second hearing was conducted on August 6, 2008, before the ALJ at which Plaintiff and a VE testified. (TR 484-505).

Subsequently, the ALJ issued a decision in which the ALJ again found that Mr. Zimmerman was not disabled within the meaning of the Social Security Act on or before December 31, 2004, when his insured status for the purpose of Title II disability benefits expired. (TR 17-27). The Appeals Council rejected Plaintiff's request to review the decision. (TR 6-8). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f) (2009); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the claimant has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the

claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984). In this case, the ALJ made the determination at step five that Mr. Zimmerman was not disabled.

The agency determined that Mr. Zimmerman's insured status for the purpose of Title II disability insurance benefits expired on December 31, 2004.[3] (TR 124). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that Mr. Zimmerman was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on December 31, 2004. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Medical Record

The medical record reveals that Mr. Zimmerman suffered a heart attack in April of 2000, and he was diagnosed in May 2000 with stable angina post myocardial infarction and history of alcohol abuse. (TR 248). Cardiac medications were prescribed for Mr. Zimmerman in June 2000 by his treating cardiac specialist, Dr. Craven, for ischemic coronary artery disease. (TR 244). In August 2000, Mr. Zimmerman returned to Dr. Craven

---

[3]Mr. Zimmerman was 49 years old when his insured status expired. Under the agency's regulations, Mr. Zimmerman was considered a "younger person" during the relevant time period between his alleged disability onset date, October 6, 2000, and the date his insured status expired on December 31, 2004. 20 C.F.R. § 404.1563(c).

and complained of episodes of chest pain and dizzyness, decrease in activities, swelling in his fingers, and use of nitroglycerin medication for stress. (TR 241). He was advised to continue his medications, and a medication to decrease swelling was prescribed. (TR 242).

Mr. Zimmerman sought emergency room treatment for chest pain in October 2000. Following a cardiac catheterization procedure, he was diagnosed with three vessel coronary artery disease, inferior akinesis (loss of normal muscle function), mild hypokinesis with overall ejection fraction approximately 50 %, and unstable angina, with successful intra-ortic balloon placement for stabilization. (TR 272). On October 6, 2000, Mr. Zimmerman underwent a coronary artery bypass graft of four arteries using vein grafts from Plaintiff's left leg. (TR 272-273). The surgeon, Dr. Vanhooser, reported that Mr. Zimmerman was in stable condition following the operation. (TR 273). However, Mr. Zimmerman developed congestive heart failure and superimposed pneumonitis. (TR 255). Mr. Zimmerman slowly improved, and he was released from his treating hospital. (TR 249-250).

On November 7, 2000, Mr. Zimmerman's treating cardiac specialist, Dr. Craven, noted that he was doing well. (TR 240). In December 2000, Mr. Zimmerman returned to Dr. Craven for follow-up examination, and he reported that he was generally feeling very good except for some flu symptoms and discharge from his leg incision. (TR 237). In February 2001, Mr. Zimmerman again saw Dr. Craven for follow-up examination, and he reported that he was feeling very depressed as a close friend had recently passed away and he was also experiencing left leg pain and numbness. (TR 235). Dr. Craven prescribed cholesterol-lowering and anti-depressant medications for Mr. Zimmerman. (TR 236). In a follow-up

6

examination in April 2001, Mr. Zimmerman reported to Dr. Craven that he was feeling good, was not experiencing chest pain or shortness of breath, and was becoming more active. (TR 233). His medications were continued. (TR 234). In a follow-up examination in July 2002, Mr. Zimmerman reported to Dr. Craven that he had sought emergency room treatment for an episode of angina but was not experiencing chest pain, his energy level was good, and he was working at a greenhouse. (TR 231). His antidepressant medication was changed. (TR 232). There are no further records of treatment by Dr. Craven.

In October 2002, Mr. Zimmerman was incarcerated in the custody of the Oklahoma Department of Corrections ("DOC") for a felony conviction for driving under the influence of alcohol. (TR 305). During his incarceration between October 2002 and October 2003, Mr. Zimmerman was treated for two upper respiratory infections, hypertension, depression, cervical pain, and chest pain resolved with nitroglycerin. (TR 296, 300, 302-303, 354-355). In December 2002, Mr. Zimmerman's examining physician noted that he "should be moved to another facility where he can be monitored more closely bec[ause] of his multiple health problems." (TR 300). In January 2003, Mr. Zimmerman was prescribed anti-depressant and sleeping aid medications. (TR 350). However, the sleeping aid medication was discontinued two months later with a notation that Plaintiff was noncompliant with this medication. (TR 350). In April 2003, Mr. Zimmerman requested to discontinue the anti-depressant medication, and the treating physician noted the request was approved and that Mr. Zimmerman exhibited a stable mood. (TR 350). Mr. Zimmerman was released from DOC custody in October 2003. However, in December 2003, Mr. Zimmerman was again

incarcerated in the custody of DOC. (TR 294). During his incarceration between December 2003 and July 2004, Mr. Zimmerman was treated with medications for bronchitis, chronic obstructive pulmonary disease (COPD), hypertension, coronary artery disease, a cold, and an insect bite. (TR 285-288).

In October 2004, Mr. Zimmerman underwent a consultative physical examination conducted by Dr. Brennan. (TR 363-365). Mr. Zimmerman reported daily chest pain occurring at random times in his mid-chest area which began five to six years previously. Mr. Zimmerman reported that the pains generally lasted three to five minutes at a time, were associated with shortness of breath and sweating, and were becoming more frequent and severe than the previous year. (TR 363, 369). Mr. Zimmerman reported that the pain was eased with nitroglycerin. (TR 369). Dr. Brennan conducted a physical examination and noted that the examination was essentially normal except for some pain in the toes of Mr. Zimmerman's left foot while standing. (TR 365). The physician also noted that although Mr. Zimmerman had a walking cane he ambulated without the cane safely, steadily, and without any evidence of loss of balance or instability. (TR 365). Dr. Brennan's diagnostic assessment was coronary artery disease, cardiomyopathy, hyperlipidemia, essential hypertension, COPD by history, and matetarsalgia of the left foot. (TR 365).

In November 2004, Mr. Zimmerman underwent a consultative psychological evaluation conducted by Dr. Cruse. (TR 370-373). Dr. Cruse noted that Mr. Zimmerman exhibited normal posture, gait, and motor behavior, and that he walked unassisted. (TR 370). Mr. Zimmerman reported episodic memory problems beginning October 6, 2000, and that

8

he quit his last job in July 2002 because "it was too hot (with his heart condition) in the greenhouses where he worked." (TR 370). Mr. Zimmerman was not taking psychotropic medications. Mr. Zimmerman described six convictions for driving under the influence of alcohol for which he had been incarcerated for two years and he reportedly had stopped abusing alcohol in 2000. (TR 371). Mr. Zimmerman stated he performed some home maintenance activities, had difficulties with his knees, and had no friends except for his wife and son. (TR 371).

In a mental status examination, Dr. Cruse noted that Mr. Zimmerman exhibited below average concentration and judgment. (TR 371-372). The diagnostic impression was adjustment disorder with anxiety "due to heart disease and not being able to work" and alcohol dependence in sustained full remission. (TR 372). There is a record of treatment of Mr. Zimmerman for angina and COPD in September 2006. (TR 415-421). Mr. Zimmerman complained of worsening chest pain with shortness of breath. (TR 415). The examining physician's assistant noted Mr. Zimmerman exhibited mildly labored breathing and an electrocardiogram showed sinus tachycardia with frequent premature ventricular contractions. (TR 415-417). Because of the abnormal test and Mr. Zimmerman's condition, he was transported by ambulance to a hospital where Mr. Zimmerman was diagnosed with angina pectoris and COPD. (TR 419-420). He was prescribed a steroid medication. (TR 421). Mr. Zimmerman underwent a pulmonary function study in May 2005. (TR 403-406). There is no medical interpretation of this study, however, except that the ME testified such an individual would be "somewhat impaired." (TR 444).

9

The ME also testified that an individual with Mr. Zimmerman's medical history would have the residual functional capacity ("RFC") to work at a job that allowed him to sit for unlimited periods of time with the ability to change positions every hour, stand and walk for one hour at a time and about four hours total in a workday, lift twenty pounds occasionally, lift ten pounds frequently, occasionally bend or stoop, rarely squat, and never crawl or climb. (TR 445).

IV. Step Four - Credibility

Plaintiff contends that there is not substantial evidence in the record to support the ALJ's credibility decision. Specifically, Plaintiff asserts that Mr. Zimmerman's symptoms of shortness of breath, chest pain, and fatigue due to progressive coronary artery disease were well supported by the medical record and that the ALJ ignored probative evidence in the medical record which was consistent with Mr. Zimmerman's allegations of disabling cardiac-related symptoms.

Following the requisite sequential evaluation procedure, the ALJ found at step two that prior to the expiration of his insured status Mr. Zimmerman had severe impairments due to coronary artery disease, status post myocardial infarction, status post coronary artery bypass graft times four, reactive airway disease, obesity, hypertension, and arthralgias. (TR 20). The ALJ summarized the evidence with respect to Mr. Zimmerman's mental impairments and, following the procedure outlined in 20 C.F.R. § 404.1520a, found that Mr. Zimmerman's mental impairments did not significantly affect his ability to work and therefore did not constitute severe impairments. At step three, the ALJ found that Mr.

Zimmerman's severe impairments were not disabling *per se* under the agency's Listing of Impairments. At step four, the ALJ found that Mr. Zimmerman was capable of performing work and that he could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, sit for one hour continuously and for a total of four hours in an 8-hour workday, occasionally bend or stoop, rarely squat, and never crawl or climb. (TR 21).

    The ALJ's decision reflects a credibility determination in connection with the RFC finding at the fourth step. At this step of the evaluation process required of administrative factfinders, the ALJ is required to determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly the province of the finder of fact," and credibility determinations will not be upset "when supported by substantial evidence. Nevertheless, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

The ALJ included the following rationale in his decision concerning the credibility of Mr. Zimmerman's allegation of disabling cardiac-related symptoms:

> After careful evaluation, the [ALJ] finds the claimant's subjective complaints are not substantiated by the objective findings or the overall weight of the evidence to be of such intensity, frequency, and duration as to prevent the performance of work activity at the level identified herein. In spite of his severe cardiac and respiratory impairments, the claimant failed to follow prescribed treatment and continued to smoke cigarettes. He also continued to drink alcohol until he was incarcerated for the second DUI. He related to the examining psychologist in November 2004 that 'alcohol is over and done with.' The evidence of record shows he was incarcerated for DUI from September 2002 until October 2003 and was in prison again for DUI from December 2003 to July 2004. His chest pain was relieved with nitroglycerin. His activities of daily living were not significantly limited. He was able to perform work activity at a greenhouse. He could do light housework such as doing the dishes, running the vacuum sweeper, and the laundry. Physical examination revealed his gait was normal and he did not actually require the use of a cane that he had with him at the examination. He had normal strength in all four extremities, full ranges of motion in his back and joints, and fine manipulation was normal. He had no sensory or neurological deficits. The claimant's testimony, in light of all of the evidence, including the medical exhibits, is deemed not sufficiently credible to support a finding of 'disability' under current criteria.

(TR 24).

Plaintiff contends that the ALJ improperly ignored probative evidence in the record that supported Mr. Zimmerman's allegation of disabling chest pain, shortness of breath, and other cardiac-related symptoms. Plaintiff points to Mr. Zimmerman's statement in an undated Disability Report that his "lungs have gotten worse. I am coughing constantly and

12

cannot sleep. Chest pains are worse. Have to take nitro daily (several)." (TR 203). Although the ALJ did not explicitly consider these subjective allegations, the decision reflects that the ALJ recognized Mr. Zimmerman alleged disabling chest pain and other cardiac-related symptoms, including shortness of breath. Alongside this statement of his condition described above, Mr. Zimmerman indicated these symptoms began in April 2005, which is four months after the date Mr. Zimmerman's insured status expired. Thus, the ALJ did not err in failing to discuss this statement by Mr. Zimmerman.

Plaintiff also asserts that the ALJ erred in ignoring other statements made in this same report by Mr. Zimmerman concerning his condition. Mr. Zimmerman stated "9-21-06 - another heart attack [and] also diagnosed with more severe COPD." (TR 204). Mr. Zimmerman further stated, "At this time I can still care for my personal needs, but it is now taking longer and I tire out more easily. I am getting worse and worse. . . I find I am not walking as much as I was even a month ago because I tire out so easily and cough so much. I cannot sleep at night because I am coughing then too and can't get any rest. It is getting harder and harder to bend over to tie my shoes and I have to depend on my wife to do things like that for me." (TR 207-208).

The ALJ did not err in ignoring these latter statements because they appear to have been made long after Mr. Zimmerman's insured status expired in December 2004. Plaintiff's arguments in her briefs do not recognize the critical date of December 31, 2004, and its impact upon Mr. Zimmerman's application. No error occurred as a result of the ALJ's failure to expressly consider these statements. Moreover, the ALJ did not ignore Mr.

13

Zimmerman's subjective statements of disabling chest pain, shortness of breath, and other cardiac-related symptoms. Rather, the ALJ found that these statements were not supported by other evidence in the record and were inconsistent with other statements Mr. Zimmerman made to treating and examining physicians.

Plaintiff argues that the ALJ did not properly evaluate Mr. Zimmerman's credibility. Relying on Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993), Plaintiff asserts that the ALJ cannot use Mr. Zimmerman's failure to stop smoking cigarettes as a basis to judge his credibility without considering whether his smoking cessation would have restored his ability to work and was actually prescribed treatment. The ALJ reasoned that Mr. Zimmerman's subjective statements were not entirely credible, in part, because Mr. Zimmerman "failed to follow prescribed treatment and continued to smoke cigarettes" after he was diagnosed with coronary artery disease. (TR 24). In the decision, the ALJ noted Mr. Zimmerman had been warned to quit smoking. (TR 23). The record shows Mr. Zimmerman was warned to stop smoking by his treating cardiac physician in June 2000, prior to his alleged disability onset date. (TR 244). This advice was also contained in a report of treatment of Mr. Zimmerman for bronchitis in March 2004 while he was incarcerated. (TR 289). Mr. Zimmerman's failure to follow the recommendations of his treating cardiac and examining physicians to stop smoking was indicative of the credibility of his complaints of disabling symptoms such as chest pain and shortness of breath. Thus, the ALJ did not err in considering his failure to quit smoking as a reason for finding his allegations of disabling chest pain and shortness of breath were only partially credible.

The ALJ also referred to Mr. Zimmerman's statement to a consultative examiner in November 2004 that "[a]lcohol is over and done with." (TR 24, 370). The ALJ noted that Mr. Zimmerman "continued to drink alcohol until he was incarcerated for the second DUI. . . . The evidence of record shows he was incarcerated for DUI from September 2002 until October 2003 and was in prison again for DUI from December 2003 to July 2004." (TR 24). The ALJ does not indicate how this history of alcohol-related incarceration detracted from Mr. Zimmerman's credibility. Mr. Zimmerman cannot receive Title II benefits for any month in which he was incarcerated for a felony conviction. 42 U.S.C. § 402(x)(1); 20 C.F.R. §404.468. See Wilkins v. Callahan, 127 F.3d 1260, 1262 (10th Cir. 1997)(purpose of § 402(x) is "to deny benefits to those persons whose needs are being provided at public expense due to their confinement"). However, the ALJ appears to have reasoned that Mr. Zimmerman's allegations were less than credible because he continued to drink alcohol after his October 2000 alleged disability onset date. The record does not support this reasoning. Mr. Zimmerman's wife explained at the hearing that his incarceration between September 2002 and July 2004 was for alcohol-related offenses that occurred prior to his cardiac surgery. (TR 469-470). In fact, the ALJ even recognized during the hearing that Mr. Zimmerman was "incarcerated . . . for [offenses that] happened prior to his physical problems." (TR 470). Mr. Zimmerman's wife also testified at the first hearing, and the record shows, that Mr. Zimmerman was inadvertently released from DOC custody in 2003 and then re-incarcerated two months later to finish his term of imprisonment. (TR 349, 471). The record shows that Mr. Zimmerman was not re-admitted to DOC custody because of an alcohol-related

conviction that occurred after he was first released from DOC custody, as the ALJ suggested in his credibility determination. Thus, the ALJ erred in relying on Mr. Zimmerman's November 2004 statement on the basis that this statement was inconsistent with the record of his incarceration.

Despite this error, the ALJ provided other reasons for finding Mr. Zimmerman's statements were not entirely credible. The ALJ reasoned that Mr. Zimmerman's credibility was questionable because his chest pain was relieved with nitroglycerin, he was able to perform some household activities, and his physical examination did not reflect limitations in his ability to walk or perform other exertional functions. The ALJ considered the testimony of Plaintiff concerning Mr. Zimmerman's functional abilities prior to the expiration of his insured status. She testified that Mr. Zimmerman performed some household activities during this relevant time period, including doing laundry and dishes and picking up around the house. (TR 466). Mr. Zimmerman himself stated in September 2004 that he performed "light housework" activities "all day every day [sic]." (TR 161). In November 2004, Mr. Zimmerman stated to a consultative mental health examiner that he performed such household activities as doing dishes, running the vacuum sweeper, doing laundry, and other light household chores. (TR 371). The ALJ reasoned that Mr. Zimmerman worked for several months at a greenhouse during 2002. Plaintiff testified that her husband quit this job because "[t]he heat was getting to him" and he was taking too much nitroglycerin, the medication prescribed to ease his chest pain. (TR 464). However, he did perform this work activity for several months, and the ALJ did not err in considering this

16

vocational history in making a credibility determination. The ALJ's credibility determination is supported by the record, and therefore it should not be disturbed.

V. <u>Step Four - RFC</u>

At the fourth step, the ALJ determined that despite his severe impairments Mr. Zimmerman had the RFC to perform a limited range of light work. The ALJ found that Mr. Zimmerman could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, sit for one hour continuously and for a total of four hours in an 8-hour workday, occasionally bend or stoop, rarely squat, and never crawl or climb. (TR 21). Plaintiff contends that this RFC finding is not supported by substantial evidence because the ALJ did not consider the impact of the walking restrictions in the RFC upon the occupation base of light work. However, the ALJ appropriately solicited the testimony of a VE to identify jobs falling within this limited range of work. According to the VE's testimony at the second hearing, an individual with Mr. Zimmerman's vocational characteristics and RFC for work could perform the light, unskilled job of textile sewing machine operator as well as the sedentary, unskilled jobs of machine tender operators and assemblers. (TR 495-496). The VE testified that the textile sewing machine operator position required standing and foot pedal usage. (TR 496). Plaintiff has not demonstrated that the VE's testimony concerning the vocational requirements of this job was inconsistent with the vocational demands of this job as set forth in publications generally relied on by vocational experts, such as the <u>Dictionary of Occupational Titles</u>. Thus, no error occurred in this regard.

Plaintiff contends that the ALJ erred in failing to include any restrictions related to

17

Mr. Zimmerman's mental impairments in the RFC determination. The ALJ's decision reflects that the ALJ considered the evidence in the record related to Mr. Zimmerman's treatment for depression and his statements concerning depression. The record shows Mr. Zimmerman was prescribed antidepressant medication by his treating cardiac physician in 2001 and by examining physicians during his incarceration in 2002 and 2003. At the time of his consultative psychological evaluation in November 2004, Mr. Zimmerman stated that he was not taking psychotropic medications and he had not received any mental health treatment. (TR 370-371). The ALJ did not err in finding that Mr. Zimmerman's ability to work was not significantly restricted by a mental impairment.

Because there is substantial evidence in the record to support the ALJ's step five determination that Mr. Zimmerman was not disabled prior to the expiration of his insured status on December 31, 2004, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application on behalf of her deceased husband for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  August 2nd , 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf.

Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____12th____ day of ____July____, 2010.

*[signature]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE